MARTHA J. SIMON (CBN 98251)
LAW OFFICE OF MARTHA J. SIMON
100 Pine St., Suite 1250
San Francisco, California 94111
(415) 434.1888 Telephone
(415) 434.1880 Facsimile
mjs@mjsimonlaw.com

Attorney for Movants/Defendants
Yeva, Inc., dba Saxe Mortgage Company,
and Gene Kristul

# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>PATRICIA A. BORING<br><br>                Debtor<br>_____<br><br>PATRICIA A. BORING<br><br>                Plaintiff<br>vs.<br><br>YEVA, INC. a California Corporation dba SAXE MORTGAGE COMPANY, GENE KRISTUL, CNA EQUITY GROUP, a California Corporation, THE ESTATE OF SAMUEL WHEAT, and all Persons Unknown Claiming Any Right, Title, Estate, Lien, or Interest in the Real Property Adverse to Plaintiff's title, and Does 1 through 20, Inclusive,<br><br>                Defendants | Case No. 22-40039 (Chapter 13)<br>Adversary Proceeding No. 22-04029<br><br>**MOTION AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT RE: SECOND AMENDED COMPLAINT**<br><br>Dated: March 1, 2023<br>Time: 10:30 a.m.<br>The Honorable William J. Lafferty III<br>Courtroom 220<br>**(or Via telephone or video conference)** |

      Yeva, Inc., dba Saxe Mortgage Company ("Saxe"), and Gene Kristul (collectively referred to herein as "Movants" or "Defendants"), by and through counsel, hereby move the Court for an order granting summary judgment as to the Second Amended Complaint ("Complaint") filed against them by Patricia

BORING V. YEVA, INC. ET AL                                                               CASE NO. 22-40039
MOTION AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JDGMT.         AP NO. 22-04029

Case: 22-40039    Doc# 131    Filed: 01/27/23   [1]   Entered: 01/27/23 10:04:06    Page 1 of 11

A. Boring ("Respondent" or "Plaintiff").

As the 1st, 2nd, 6th and 7th causes of action which Plaintiff included in the Complaint were dismissed at the December 6, 2022 hearing on Defendants' Motion to Dismiss, the present Motion seeks summary judgment with respect to the remaining 3rd, 4th and 5th causes of action.

This Motion is supported by the within Points and Authorities, the Declaration of Gene Kristul and the Declaration of Counsel filed herewith.

## FACTUAL BACKGROUND

Prior to the Trustee's Sale held on August 5, 2022, Saxe was the holder of a Note executed by Respondent, in the original principal amount of $997,500, secured by a Deed of Trust recorded October 28, 2016, against the real property commonly known as 1028 Evelyn Avenue, Berkeley, CA 94618 ("The Property"). Pursuant to the terms of the Note, Respondent was to make 35 monthly payments of $8,925.94 beginning December 15, 2016, until the November 15, 2019 maturity date, at which time the total amount of $1,006,435.94 was due and payable ("The Loan"). (Dec. ¶2).

Due to Respondent's failure to make the contractual payments, Saxe initiated foreclosure proceedings. A Notice of Default was filed, a Trustee's Sale was set for November 30, 2021, and continued to January 18, 2022. (Dec. ¶4).

Respondent filed her Chapter 13 Bankruptcy Petition on January 17, 2022, staying the scheduled Trustee's Sale. As set forth in Saxe's Proof of Claim (Claim #9), $1,052,081.41 was due and owing to Saxe as of the filing of the Chapter 13 case. (Dec. ¶5).

The Loan was the third refinance. Saxe had made two prior loans to Respondent, secured against The Property. She signed *three* Uniform Residential Loan Applications originated by Mike Mulry of Defendant CNA Equity Group, the mortgage broker. (Dec. ¶7).

BORING V. YEVA, INC. ET AL    CASE NO. 22-40039
MOTION AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JDGMT.    AP NO. 22-04029

Case: 22-40039    Doc# 131    Filed: 01/27/23    Entered: 01/27/23 10:04:06    Page 2 of 11

2

In connection with three separate loan transactions, Respondent signed three loan applications, various disclosures, authorizations to pull credit and other related documents. Thereafter CNA submitted a full borrower loan application package to Saxe for loan consideration. In each instance, Respondent signed a set of Saxe's loan documents in front of a notary. This was done *three* times, with *three* sets of loan documents, in front of *three notaries assigned by three different title companies*. Respondent confirmed to Movant Kristul in late 2021 that the signatures on the loan documents were indeed hers. (Dec. ¶¶8,10). For there to have been any conspiracy and fraud, the three national title companies and their notaries would have to have been involved. Clearly, this is implausible.

Saxe was the lender in the three transactions. Neither Kristul nor Saxe acted as broker with respect to any of the loans. CNA acted as broker in the three transactions. (Dec. ¶¶11, 15).

Saxe wired funds to Stewart Title of California, Inc. with escrow instructions, and on October 28, 2016, Stewart Title wired $76,664.86 of The Loan proceeds to the Bank of America account of Patricia Boring, as Successor Trustee of The Stanley J. Maluka Living Trust dated 3201998. Previously, Old Republic Title Company had wired $549,500 to the same Bank of America account, and First American Title Company had wired $66,019.28 to the same Bank of America account, in connection with the prior refinanced loans. It is common practice that a title company verifies an account prior to sending funds to a borrower, assuring that it is the borrower's account. (Dec. ¶¶12, 13).

Respondent received a total of $692,184.14 from the three Saxe loans, as shown on wire transfer confirmations from the three title companies. (Dec. ¶14).

## PROCEDURAL HISTORY

BORING V. YEVA, INC. ET AL
MOTION AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JDGMT.
CASE NO. 22-40039
AP NO. 22-04029

3

Case: 22-40039    Doc# 131    Filed: 01/27/23    Entered: 01/27/23 10:04:06    Page 3 of 11

The procedural history of the within adversary proceeding and the underlying Chapter 13 case is set forth below.

Defendants filed a motion to dismiss the original complaint on May 21, 2022 (DOC #8). That matter was originally set for June 30, 2022 and continued twice.

In the interim, on July 5, 2022, the court granted Saxe's motion for relief from stay (DOC #78), which had been filed April 5, 2022 in the main case. Plaintiff's effort to extend the stay of the order granting relief was denied on July 25, 2022 (DOC #91).

Thereafter, Plaintiff sought a temporary restraining order to enjoin Saxe's actions to foreclose on The Property. The first TRO was denied on July 22, 2022 (DOC #27); the second was granted on July 25, 2022 (DOC#31).

At the July 28, 2022 hearing on Defendants' motion to dismiss Plaintiff's original complaint, the Honorable Roger Efremsky ordered that Plaintiff amend the Third Cause of Action, but found that the remaining claims were sufficiently plead. (DOC #38).

Plaintiff then sought to enjoin the scheduled foreclosure sale; a preliminary injunction was denied on August 3, 2022 (DOC #36).

Saxe foreclosed on The Property on August 5, 2022. (Dec. ¶¶2, 16).

On September 2, 2022, Plaintiff filed her First Amended Complaint. (DOC #39). Defendants moved to dismiss the First Amended Complaint, which was heard by Judge Efremsky on December 6, 2022. The written order in that matter was entered on January 20, 2023 (DOC#60).

Plaintiff filed the Second Amended Complaint on January 6, 2023, and, with the exception of the deadline to file the amended complaint, she ignored the terms of the order. The Judge had granted Defendants' Motion to Dismiss as to the 1st, 2nd, 6th and 7th causes of action, each of which

BORING V. YEVA, INC. ET AL  CASE NO. 22-40039
MOTION AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JDGMT.  AP NO. 22-04029
Case: 22-40039    Doc# 131    Filed: 01/27/23    Entered: 01/27/23 10:04:06    Page 4 of 11

4

was dismissed without leave to amend; the 3rd cause of action was dismissed with leave to amend by January 6, 2023; the Motion to Dismiss was denied as to the 4th and 5th causes of action. Despite the ruling, Plaintiff filed the Second Amended Complaint, with all of the prior causes of action, four of which had previously been dismissed.

In view of the Judge Efremsky's Order, the present Motion addresses the 3rd, 4th and 5th remaining causes of action.

**MOVANTS ARE ENTITLED TO SUMMARY JUDGMENT**

Respondent's Complaint cannot survive a motion for summary judgment. The documents attached to the Declaration of Gene Kristul clearly show that there can be no genuine dispute as to any material fact. Respondent's allegations cannot withstand the face of the many executed documents.

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); S*ee Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *Sheehan v. City of S.F.*, 743 F.3d 1211, 1220 (9th Cir. 2014).

One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. *Celotex*, 477 U.S. at 325. Rule 56 is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056. Respondent's claims against Movants are totally unsupported. At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* -

BORING V. YEVA, INC. ET AL  
MOTION AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JDGMT.  
CASE NO. 22-40039  
AP NO. 22-04029  
5

Case: 22-40039    Doc# 131    Filed: 01/27/23    Entered: 01/27/23 10:04:06    Page 5 of 11

475 U.S. 587, 106 S. Ct. 1348 (1986) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). In *Matsushita,* respondents were unable to establish that there was a genuine issue of material fact as to whether petitioners entered into a conspiracy that caused respondents to suffer a cognizable injury and were therefore unable to survive petitioners' motion for a summary judgment.

Such is the case here. Plaintiff's allegations are thoroughly unsupported. She has not, and cannot establish that Movants were party to an alleged conspiracy or that Defendant Wheat was an agent of Saxe, as she contends. The allegations and causes of action against Movants are bare conjecture and refuted by the documentation. A review of Plaintiff/Respondent's signed loan documents, the funds transferred to her bank account and all of the related documentation, clearly support summary judgment in Movants' favor.

## THE THIRD CAUSE OF ACTION

The Amended Third Cause of Action alleges fraud against all Defendants, as follows:

28. Plaintiff incorporates by reference all preceding allegations.
29. *Wheat made verbal Representations to Boring* in Berkeley, California, as follows:

    a. Beginning in approximately February 2015 and concluding on March 25, 2015 (1) that he was a paralegal; (2) that he was familiar with the operations of the Alameda County Assessor's Office; (3) that he would assist her in payment of her property taxes due to her disability; (4) that based on his investigation, Plaintiff's father had overpaid property taxes and that there was money owed to Plaintiff; and (5) that each of the documents Wheat forced Plaintiff to sign, including without limitation, the Promissory Note and Deed of Trust were necessary to obtaining monies from the reserve fund held her by the Assessor's Office.

    b. *On or about January 20, 2016, Wheat represented* that in order to obtain the reserved funds, *Wheat represented* that the documents related to the Second Loan, including without limitation, the Promissory Note and Deed of Trust, were necessary to obtaining monies from the reserve fund held by the Assessor's Office. c. *On or about October 26, 2016, Wheat represented* that the documents related to the Third Loan, including without limitation, the Promissory Note and Deed of Trust, were necessary to obtaining monies from the reserved fund held by the Assessor's Office. The

BORING V. YEVA, INC. ET AL     CASE NO. 22-40039
MOTION AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JDGMT.     AP NO. 22-04029
6

Case: 22-40039    Doc# 131    Filed: 01/27/23    Entered: 01/27/23 10:04:06    Page 6 of 11

Representations were made in furtherance of the conspiracy as alleged in paragraph 20 above.

30. In making the Representations, Wheat was acting as the authorized agent for the other Defendants, including without limitation, Saxe.

31. In justifiable reliance on the Representations, Plaintiff executed documents including documents relating to the Loans.

32. The Representations were false and known by Defendants to be false and made with intent to have Plaintiff rely on them.

33. As a result of Defendants' fraud, as alleged above, Plaintiff has suffered damages, including without limitation, the loss of proceeds from the Loan and the potential loss of equity in the Residence, all in an amount to be proven at trial. Plaintiff seeks these damages pursuant to Rule 7001(1), Federal Rules of Bankruptcy Procedure.

34. Defendants' conduct as alleged herein was fraudulent, wanton, willful, malicious, and intended to deprive Plaintiff of her rights. Plaintiff, therefore, seeks an award of exemplary and punitive damages against Defendants. *(Emphasis added).*

Plaintiff concedes that all of the Representations were made by Defendant Wheat. Yet Paragraph 20 (referred-to in Paragraph 29 above) alleges, with absolutely no basis, that "the actions and the Representations were made in furtherance of a conspiracy between the Defendants, including Saxe, Wheat, Kristul, and CNA, pursuant to which these parties…knowingly and willfully conspired and agreed among themselves to defraud Boring to exhaust all her equity in the Residence to make loans, earn commissions and misuse the proceeds without paying over any proceeds to Debtor…".

There was *no* conspiracy and no fraud on the part of Movants. The Representations were made by Defendant Wheat, as clearly alleged in the Complaint. Movant Saxe funded loans to Plaintiff, who received proceeds of $76,664.86 from the Loan, and $66,019.28 and $529,500 from the two prior loans, for a total of $692,184.14, as indicated on the wire transfer forms. (Dec. ¶¶3,12,13).

Plaintiff's allegation that "The parties cooperated, aid (*sic*), encouraged and ratified the Loans, and each of them, despite knowing that Boring had not ability to repay the Loans and with the intent and knowledge that the Residence would be foreclosed on" (Complaint, pg. 6, lines 10-13) is thoroughly

BORING V. YEVA, INC. ET AL　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　CASE NO. 22-40039
MOTION AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JDGMT.　　　　　　　AP NO. 22-04029

7

Case: 22-40039    Doc# 131    Filed: 01/27/23    Entered: 01/27/23 10:04:06    Page 7 of 11

specious. The signed documents are not subject to dispute.

What Movants *knew* is what they learned from Plaintiff/Respondent's loan application, including that she had been employed as an Independent Paralegal for 5 years (Dec. ¶8). Furthermore, Movants *knew* from her handwritten statement of October 26, 2016 that "I have investments coming due that are sufficient to pay the loan in full." (Dec. ¶9).

Neither Movant acted as broker and relied on the representations in the signed loan applications, which Plaintiff/Respondent admitted to having signed. (Dec. ¶¶8, 10, 11). There is no genuine dispute as to the material facts disclosed in the loan documents.

Paragraphs 5 and 18(c) of the Second Amended Complaint allege that Plaintiff resided at the Residence [The Property], and that Defendants should have known that she resided there. Yet the signed Non-Occupancy Rider recorded with the Deed of Trust clearly states that The Property at 1208 Evelyn Ave. was not her residence and that "she had no intention of occupying it as such. The Loan Applications and her insurance policy also disclose that she lived in San Pablo, not at The Property. (Dec. ¶8).

It is customary with Saxe's loans, as in the present case, that the broker obtains information from the borrower, and submits the loan package to Saxe. Movants have no communication with brokered loan borrowers prior to making a loan and had no communication with Plaintiff/Respondent until prior to the scheduled foreclosure sale in late 2021. She admitted that she had signed the loan applications, the three sets of loan documents from three different title companies with three different escrow officers, before three different notary publics. In connection with those loans, Saxe sent funds to three escrow companies, which sent funds to her account. (Dec. ¶15).

The allegations simply fail to provide any nexus between Movants and Defendant Wheat who

BORING V. YEVA, INC. ET AL  
MOTION AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JDGMT.  
CASE NO. 22-40039  
AP NO. 22-04029

Case: 22-40039    Doc# 131    Filed: 01/27/23    Entered: 01/27/23 10:04:06    Page 8 of 11

8

Plaintiff/Respondent states made various Representations to her. If there was any fraud, Movants were not party to it. A blanket allegation of a conspiracy, with absolutely no evidence, carries no weight. The documents support summary judgment as to the Third Cause of Action.

### THE FOURTH CAUSE OF ACTION

The Fourth Cause of Action alleges a breach of fiduciary duty against all Defendants:

"Saxe, Gene Kristul, and CNA in their capacity as brokers, owed Plaintiff a fiduciary duty to make the fullest disclosure of all material facts that might affect Plaintiff's execution of documents relating to the Loans…as well as to investigate material facts, including whether Plaintiff qualified to obtain the Loans, had any ability to repay the Loans, or was aware of her obligations under the Loans or the documents she purportedly signed." (Complaint ¶36, pg. 8-9).

Yet as set forth above, Movants Saxe and Kristul were not brokers in the loan transactions and owed no fiduciary duty to Plaintiff. The Final Borrower's Closing Statement from Stewart Title of California, Inc. clearly indicates that CNA Equity Group, Inc. was the broker in the transaction and received a Broker's fee of $12,468.75. (Dec. ¶14).

Lending institutions have no fiduciary duty to borrowers. In California, the "relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark v. Heart Fed. Sav. & Loan Ass'n,* 231 Cal. App. 3d 1089, 1093 n.1 (1991). A lender is entitled to pursue its own economic interests in a loan transaction. This right is inconsistent with the obligations of a fiduciary which require that the fiduciary knowingly agree to subordinate its interests to act on behalf of and for the benefit of another. *Id.*

The relationship in a lender-borrower situation is a debtor-creditor relationship and not a fiduciary one. See *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.*, 804 P.2d 900, 905 (Idaho 1991). A mortgage loan broker, not the lender, acts in a fiduciary capacity with the borrower. *See*

BORING V. YEVA, INC. ET AL   CASE NO. 22-40039
MOTION AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JDGMT.   AP NO. 22-04029

Case: 22-40039   Doc# 131   Filed: 01/27/23   Entered: 01/27/23 10:04:06   Page 9 of 11

*Wyatt v. Union Mortgage Co.,* 24 Cal.3d 773, 782 (1979). As Movant Saxe was the lender, and neither Saxe nor Kristul acted as broker, they were not fiduciaries; therefore, they could not have breached a fiduciary duty to Respondent.

At the hearing on the Motion to Dismiss, Judge Efremsky suggested that it is more appropriate to deal with the issue of the alleged fiduciary relationship in a summary judgment motion than in a motion to dismiss. *See* Transcript (Exh. 1 to Declaration of Counsel), pg. 7, lines 10-12. Now, a review of the documents will show that Movants were not brokers, that the relationship between a lender and borrower is not a fiduciary one, and that summary judgment must be granted in favor of Movants.

## THE FIFTH CAUSE OF ACTION

Plaintiff's Fifth Cause of Action alleges unfair competition and violation of the California Business and Professions Code §17200 and the California Consumer Legal Remedies Act, California Civil Code §1770 *et. seq.* Plaintiff fails to provide and cannot provide anything more than a conclusory allegation against Movants.

It is apparent that the cause of action was simply thrown into the Complaint, with no support. At the December 6, 2022 hearing, counsel for Plaintiff was clearly vague about the allegation and stated "I'm not wedded to it, to be honest. I mean it's something we thought should be in there…". *See* Transcript (Exh. to Declaration of Counsel), pg. 8, lines 21-22.

The documents are clear. There is no showing of any unlawful, unfair or fraudulent business practices or false advertising. Summary judgment is appropriate.

## CONCLUSION

The Second Amended Complaint is replete with merely conclusory allegations. The documents speak for themselves. The loan application was provided to Movants by a broker, and signed by

BORING V. YEVA, INC. ET AL  
MOTION AND POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JDGMT.

CASE NO. 22-40039  
AP NO. 22-04029

10

Case: 22-40039   Doc# 131   Filed: 01/27/23   Entered: 01/27/23 10:04:06   Page 10 of 11

Plaintiff/Respondent Boring; the loan documents were signed before notaries from three different escrow companies. The lender Saxe agreed to make the loan and funded it. There is no genuine dispute as to any material fact.

In view of the foregoing, Defendants Yeva Inc., dba Saxe Mortgage Company, and Gene Kristul request that summary judgment be granted in their favor.

Dated: January 26, 2022

Respectfully submitted,

LAW OFFICE OF MARTHA J. SIMON

*By: Martha J. Simon*
Attorney for Defendants
Yeva, Inc. dba Saxe Mortgage Company
and Gene Kristul